IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CARL GREENE, | : | 1:06-cv-11 |
| Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| VIRGIN ISLANDS WATER AND POWER | : | |
| AUTHORITY and ALBERTO | : | |
| BRUNO-VEGA, | : | |
| Defendants. | : | |

## <u>MEMORANDUM AND ORDER</u>

### July 22, 2011

Pending before the Court is the Motion of the Virgin Islands Water and

Power Authority ("WAPA"), for Summary Judgment (Doc. 170), filed on January

21, 2010, and the Motion of Alberto Bruno-Vega ("Bruno-Vega") for Summary

Judgment (Doc. 173), filed on January 22, 2010 (collectively "the Motions"). The

Motions have been fully briefed by the parties and are therefore ripe for our

review.[1] As both Motions discuss the same legal issues, we will address them

together. For the reasons that follow, the Motions shall be granted in part and

---

[1] On February 24, 2010, this matter was reassigned to the undersigned, sitting by
designation in the District of the Virgin Islands.

1

denied in part.[2]

# I.   BACKGROUND

The instant matter, filed by Plaintiff Carl Greene ("Plaintiff" or "Greene")

arises out of his termination from employment with WAPA.[3]  Greene was first

hired by WAPA as an Apprentice Lineman on May 21, 1990 and was promoted to

the Line Department's highest ranking employee, Line Superintendent, on

September 1, 2001.  It was from this position that Greene was terminated on April

7, 2005.

The Plaintiff was terminated after an investigation by the Inspector General

revealed that Greene was responsible for tampering with his residential electrical

meter.  The Inspector General's report recommended that WAPA take appropriate

administrative action against Greene and/or make criminal referral of Greene's

alleged actions.  WAPA commenced disciplinary proceedings against Greene, and

after several hearings, Greene was terminated for violating provisions of the

WAPA Personnel Policies and Procedures Manual, including tampering with his

---

[2] As a threshold matter, we note that Plaintiff has withdrawn his claims asserting violations of the Virgin Islands Civil Rights Act (Count II) and Title VII of the Civil Rights Act of 1964 (Counts I and III) as well as his negligent infliction of emotional distress claim (Count X) asserted against Defendant Alberto Bruno-Vega.

[3] WAPA is a public corporation and autonomous government instrumentality. V.I. Code Ann. Tit. 30 §103(a) (2011).

residential meter and obtaining security lighting without authorization or payment.

Greene claims that the Inspector General's investigation was directed towards his residential meter by Bruno-Vega, WAPA's Executive Director. Although Greene, a Black, West Indian, has now withdrawn his discrimination claims against Bruno-Vega, Greene argues that WAPA targeted him because he was not of Hispanic origin.  Greene essentially argues that Bruno-Vega single-handedly orchestrated his downfall, and during that course of conduct, Bruno-Vega and WAPA defamed him, violated his constitutional rights protected by the First and Fourteenth Amendments, and committed a variety of torts against him, including abuse of process, malicious prosecution and intentional infliction of emotional distress.

We shall now turn to an analysis of the Defendants' Motions with respect to the Plaintiff's remaining claims.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by

3

pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of*

4

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment."  *Anderson*, 477 U.S. at 247-48.

## III.   DISCUSSION

As a threshold matter, we note that WAPA is a public-power utility operating under government authority and a state actor subject to the First and Fourteenth Amendments of the United States Constitution. *Eddy. v. V.I. Water & Power Auth.*, 955 F. Supp. 468, 476 (D.V.I. 1997).

### A.   Violation of Title VII - Counts I and III

The plaintiff asserts that WAPA discriminated against him in his pay, promotion, and termination based on his race and national origin in violation of Title VII of the Civil Rights Act of 1964. The law states in part that "[i]t shall be an unlawful employment practice for an employer . . .  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or national origin." 42
U.S.C. § 2000e-2(a)(1).

### 1.   Discrimination in Termination

As there is no direct evidence of discrimination in Greene's termination, to
establish a *prima facie* case of discrimination in termination under Title VII,
Greene must show that: (1) he was a member of a protected class; (2) he was
qualified for the position he held; (3) he suffered an adverse employment action;
and (4) similarly situated employees who are not members of the protected class
were treated more favorably. *Jones v. School Dist. Of Philadelphia,* 198 F.3d 403,
410-11 (3d Cir. 1999); *Jackson v. Univ. of Pittsburgh,* 826 F.2d 230, 232 (3d Cir.
1987). Once an employee has established a *prima facie* case of discrimination, an
employer may defeat a claim by showing a legitimate, non-discriminatory reason
for an adverse employment decision. In order to prevail over the employer, a
plaintiff must show that the employer's proffered legitimate reason is merely a
pretext for unlawful discrimination. *Goosby v. Johnson & Johnson Med., Inc.*, 228
F.3d 313, 319 (3d Cir. 2000).

As a Black, West Indian, it is undisputed that Greene is a member of several
protected classes. It is also undisputed that Greene was qualified for his position as

Line Superintendent. It is also clear that Greene suffered adverse employment decisions when he was passed over for promotion and terminated on April 7, 2005.[4] Thus, we must determine if enough evidence exists to establish that similarly situated employees who were not Black, West Indians were treated more favorably than Greene or alternatively whether the adverse employment action raises an inference of discriminatory animus.

WAPA argues that no reasonable jury could find that Greene has established a *prima facie* case of discrimination because Greene has failed to present evidence of any similarly situated employees who are not members of the protected class who were treated more favorably. The Defendant argues that to be considered "similarly situated" for purposes of a Title VII employment discrimination claim, "those individuals must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Davis v. City of Philadelphia Water Dept.*, 57 Fed. Appx. 90, 92 (3d Cir. 2003). The Third Circuit has ruled that an allegation that "some members of one group are sometimes treated better and sometimes treated worse than members of another group" *may* be an acceptable

---

[4]While the Plaintiff has alleged discrimination with regards to WAPA's failure to promote him, these claims are time-barred for the reasons discussed in Section III.A.3.

inference to establish the fourth prong at the *prima facie* state of analysis for a discrimination claim. *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998).

Greene alleges that WAPA was discriminatory in failing to twice promote him as Line Superintendent in favor of a White employee and a Hispanic employee. Greene also alleges that his termination in 2005 was racially motivated. The Plaintiff argues that it is "clear" that WAPA did not want to promote a Black, West Indian to a supervisory position. WAPA disputes this claim and argues that Greene was not promoted early because, at age 32, he had limited experience. WAPA also notes that Greene eventually was promoted and that his successor was a Black, West Indian.

Despite these legitimate, non-discriminatory reasons offered by WAPA, Plaintiff has cited multiple examples of alleged injustices including the hiring of non-qualified Hispanics, failure to receive evaluations with sufficient frequency, vacancies in his department that were not filled, failures to follow the WAPA employee manual, and trumped up allegations of theft in an effort to show that his termination was merely WAPA discriminating against Greene based on his race and national origin. While the evidence is tenuous, a reasonable jury could disagree about whether Greene's race or national origin played into WAPA's decisions about Greene's employment.

WAPA also argues that even if Greene can establish a *prima facie* case for discrimination, his violations of WAPA's Personnel and Policy Manual were a legitimate, non-discriminatory reason for terminating Greene's employment. "To defeat summary judgment when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Under the first prong, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 764-65 (internal citations and quotations omitted). Plaintiff has presented evidence about WAPA's alleged "sham process" including plaintiff's contention that he engaged in no wrongdoing, WAPA's failure to follow its own procedures and that the Plaintiff was singled out for investigation of line theft. Whether WAPA honestly believed the asserted grounds for Greene's dismissal at the time of termination, as

9

well as Plaintiff's contentions about the flawed process used to terminate him,

creates a material dispute of fact such that a reasonable jury could conclude that

WAPA's articulated reasons for Greene's termination were inherently weak and/or

false or that an invidious discriminatory reason was more likely than not a

determinative factor in Greene's termination.

Thus, we find that there are genuine issues of material fact related to the

Plaintiff's Title VII claim pertaining to his termination. Accordingly, WAPA's

Motion for Summary Judgment as to Counts I and III, to the extent it relates to the

Plaintiff's termination, shall be denied.

## 2.    Discrimination in Pay

Greene's pay discrimination claim is based on his allegation that Tom Lewis

("Lewis"), a Caucasian who held the position of Line Superintendent in 1998, was

paid a salary of $70,000 for the job, whereas Greene's salary was $63,000 when he

was promoted to Line Superintendent in 2001. Using the same test laid out above,

we find that Greene's claim fails because while Lewis made $7,000 more than

Greene, Greene's direct predecessor Jacinto Solivan ("Solivan"), a Hispanic, made

$3,000 less than Greene. Furthermore, Greene alleges no specific facts showing

other circumstances that give rise to an inference of unlawful pay discrimination.

Thus, Greene has neither shown "some causal nexus between his membership in a

protected class and the decision" for him to be paid differently than his two

predecessors and one successor nor has he alleged sufficiently specific facts

whereby a jury could infer that his pay discrimination was due to his race and

ethnicity. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). As the

Plaintiff has failed to establish a *prima facie* case for pay discrimination, WAPA's

Motion for Summary Judgment as to Counts I and III, to the extent it relates to the

Plaintiff's salary, shall be granted.

### **3.   Discrimination in Promotion**

In order to set forth a claim for discrimination in promotion under Title VII,

a plaintiff must file an EEOC charge within three hundred (300) days of the alleged

discrimination.[5] 42 U.S.C. § 2000e-5(e)(1). Both Lewis and Solivan were placed

into the Line Superintendent position before Greene, who was eventually promoted

on September 1, 2001. As Greene did not file his EEOC charge until July 26, 2005,

nearly four (4) years after his own promotion, Greene's failure to make a timely

---

[5]The filing of an EEOC complaint is a prerequisite to filing a civil action under Title VII of the Civil Rights Act of 1964. "The 300-day period applies where the plaintiff has initially instituted proceedings with a State or local agency. Otherwise, the applicable period is 180 days." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 n. 8 (3d Cir. 1995); 42 U.S.C. § 2000e-5(e)(1). The 300-day period is a dispositive issue in the case at bar because the Plaintiff's alleged discriminatory lack of promotion occurred prior to September 2001—well over 300 days before the Plaintiff filed his EEOC claim in 2005.

EEOC complaint suggests the Court should dismiss all of the Plaintiff's charges related to discrimination in promotion.

The Plaintiff argues that the 300 day requirement is fluid. The Supreme Court has recognized that "the filing of a timely charge is 'a requirement that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling.'" *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). The Plaintiff argues that the EEOC filing period should be tolled because the Defendant's conduct constituted a "continuing violation." Under the "continuing violation" theory, a "plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *West* at 754. To show that his claim falls within the "continuing violation" theory, a plaintiff must show (1) that at least one discriminatory act occurred within the filing period and (2) demonstrate that the discriminatory act is neither isolated nor sporadic. *Id.*

The Supreme Court has held that the continuing violation doctrine does not toll the statute of limitations period for discrete discriminatory acts occurring before the statutory time period and has found that a "discrete" act "occurred" on

the day it "happened."[6] *AMTRAK v. Morgan*, 536 U.S. 101, 110 (2002). The Court

emphasized that "discrete discriminatory acts are not actionable if time barred,

even when they are related to acts alleged in timely filed charges" and provided a

list of discrete acts including termination and failure to promote. *Id.* at 113-14.

Greene's failure to promote claim is based on WAPA's hiring of Lewis and

Solivan instead of promoting Greene. As the hiring of Lewis and Solivan were two

discrete acts (in 1998 and 1999) that resulted in WAPA's failure to promote

Greene, Greene's failure to promote claim is based on isolated incidents that

occurred well before the 300-day period prior to the filing of his EEOC charge in

2005. Since the failure to promote is a discrete, isolated act and Greene's claim

was filed over *five* years after the alleged failure to promote, his claim is time

barred by the statute of limitations.

WAPA's Motion for Summary Judgment as to Counts I and III, to the extent

it relates to the Plaintiff's promotion, shall be granted.

## B.      Hostile Work Environment Claim - Count III

Racial harassment that creates an abusive and hostile work environment is

actionable under Title VII of the Civil Rights Act of 1964. *Patterson v. McClean*

---

[6]Defining "to happen" as "to take place" or "to arise."  *AMTRAK v. Morgan*, 536 U.S.
101, 109 n. 5 (2002).

13

*Credit Union*, 491 U.S. 164, 179 (1989). To establish a racially hostile work environment, a plaintiff must prove that (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the employee; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *West v. Philadelphia Electric. Co.*, 45 F.3d 744, 753 (3d Cir. 1995). The United States Supreme Court has ruled that no single factor is dispositive in a hostile work environment claim but that Title VII is violated when discrimination is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993).

As to the first prong of the hostile work environment test, the Plaintiff alleges he was told by a Hispanic supervisor, Jacinto Solivan, to no longer supervise Hispanic employees as they were "his people," not Greene's, and that Solivan was transferred for making discriminatory remarks to Greene. *See* Pl.'s Resp. To Def.'s Statement of Material Undisputed Facts at ¶ 7. Viewing the evidence in the light most favorable to Greene, as we must, we conclude that Greene has proffered sufficient evidence whereby a jury could infer that WAPA employees acted with racial animus.

14

To aid in the determination as to whether discrimination is severe or pervasive, the Supreme Court has developed workplace discrimination standards in an attempt to create a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris* at 21. The Supreme Court has ruled that mere statements that may offend an employee do not sufficiently infect the conditions of the workplace to warrant action under Title VII. *Id.* "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Id.* Greene's proffered evidence to prove severe and pervasive discrimination generally references the Plaintiff's entire ninety-four page statement of disputed and undisputed facts instead of pointing to specific examples of relentless discrimination. While Greene has identified a few specific instances of alleged intentional discrimination by individual employees, even if all the alleged discriminatory acts were found to be true, it is our view that no objectively reasonable person could find that WAPA employees allegedly discriminatory acts rose to such a severe or pervasive level to create a hostile and abusive workplace.

Since Greene has not proffered enough evidence to show that WAPA employee discrimination was severe or pervasive, Greene cannot make out a *prima*

*facie* case for a hostile work environment claim. Accordingly, WAPA's Motion for Summary Judgment as to Count III, to the extent it relates to the Plaintiff's hostile work environment claim, shall be granted.

### C.   Civil Rights Violation - Count XIV[7]

Count XIV generally alleges that Defendants violated Plaintiff's rights pursuant to 42 U.S.C. § 1983 but provides little to no specificity about the claim. As a threshold matter, this claim cannot be brought against WAPA because as an instrumentality of the Virgin Islands government, WAPA is not a "person" subject to damages liability under Section 1983. *Eddy v. V.I. Water and Power Auth.*, 955. Supp. 468, 477 (D.V.I. 1997).

"To succeed on a claim under Section 1983, a plaintiff must show that: (1) the defendants are "persons" within the meaning of the statute; (2) the defendants acted under color of law; and (3) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes." *McCauley v. Univ. of the V.I.*, 2009 WL 2634368, at *5 (D.V.I. Aug. 21, 2009) (citing 42 U.S.C. § 1983*; Anderson v. Davila*, 125 F.3d 148, 159 (3d Cir. 1997)). As discussed above, WAPA is not a "person" under Section 1983. The Courts have also ruled that

---

[7]The Plaintiff alleges no specific violation of Plaintiff's constitutional rights in Count XIV. Rather, the count states that "Defendant Bruno-Vega acted under color of law and violated Plaintiff's rights pursuant to 42 U.S.C. Sec. 1983" and appears to be a catchall for the Plaintiff's various constitutional claims.

individuals acting in their official capacity cannot be "persons" under Section 1983. Thus, to the extent that Bruno-Vega was acting in his official capacity as Executive Director of WAPA, he cannot be deemed a "person" and held liable under Section 1983. *Brow v. Farrelly*, 994 F.2d 1027, 1030 (3d Cir. 1993).

Plaintiff argues that Bruno-Vega may be held liable in his personal capacity. "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Ky. v. Graham*, 473 U.S. 159, 166 (1985). As Executive Director of WAPA, there is no doubt that Bruno-Vega was acting under color of law.[8] Bruno-Vega argues that it is unclear from the Plaintiff's complaint whether he is being sued in his official or individual capacity. "Before finding that a defendant is sued in his individual capacity, the court considers whether the pleadings offer the defendant adequate notice that his personal assets are at stake in the proceeding." *Smith v. Cent. Dauphin Sch. Dist.*, 419 F. Supp. 2d 639, 649 (M.D. Pa. 2005). We agree with the Defendants that neither the complaint nor the course of the proceedings has provided Bruno-Vega with adequate notice that he is being sued in his individual capacity. In fact, the Complaint only identified Bruno-Vega by his

---

[8] State or territorial officials sued in their individual capacities are "persons" within the meaning of Section 1983. *Hafer v. Melo*, 502 U.S. 21, 26 (1991).

official title.

Based on the foregoing, we find that WAPA, as an instrumentality of the Government cannot be sued under Section 1983. Additionally, for the reasons stated above and below, we find that Plaintiff's claims against Bruno-Vega in either his official or individual capacity fail. Therefore, Defendants' Motion for Summary Judgment as to Count XIV shall be granted.

### D.   Federal Constitutional Claims - Counts V, XII, and XIII

Even if Bruno-Vega were being sued in his individual capacity and found amenable to suit under Section 1983, all of Greene's federal constitutional claims would fail for the following reasons.

### 1.   Violation of Right to Free Speech - Count V

To prove that a government employer has violated an employee's First Amendment rights by retaliating against an employee for filing complaints, the plaintiff employee must show that (1) he engaged in protected activity and (2) that the protected activity "was a substantial factor in the alleged retaliatory action." *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1997)). Further, an employer may defeat the employee's retaliation claim by showing that the challenged actions

would have still taken place absent the protected conduct.[9] *Id.* In the instant case, Greene claims that WAPA and Bruno-Vega violated his First Amendment rights by terminating him for his complaints about suspected corruption and suspected line theft, his refusal to approve the hiring of a supposedly unqualified employee recommended by Bruno-Vega, and his refusal to provide false testimony to the Public Services Commission ("PSC").

Speech by a government employee is a "protected activity" if "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006). "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). As Greene was only in a position to suspect corruption/theft, disapprove of an employee hiring, and testify before the PSC *because* of his official duties as Line

---

[9]WAPA claims that Greene was fired for violating various provisions of the WAPA Personnel Policies and Procedures Manual.

Superintendent, his speech was clearly pursuant to his official duties, thus, Greene was not speaking as a citizen when he made complaints.[10]

Additionally, Greene fails to provide sufficient factual basis that his statements involved an issue of public concern. Matters of public concern often have social or political relevance for the community. *Gorum v. Sessoms*, 561 F.3d 179 (3d Cir. 2009). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 137, 147-48 (1983). A reasonable jury is unlikely to find that Greene's complaints related to a matter of public concern since most of his statements dealt with personal grievances about workplace personnel and policy. Greene's argument that hiring decisions are a matter of public concern because the public would ultimately pay the hired person's salary is tenuous at best. While line theft and corruption at WAPA may be matters of public concern, a dispute over this fact is immaterial because it has already been established that Greene was not speaking as a citizen.   The United States Supreme Court summarized the issue at hand best in *Connick*:

> when a public employee speaks not as a citizen upon matters of public
> concern, but instead as an employee upon matters only of personal interest,

---

[10]It is noteworthy that Greene himself states that one of his duties as Line Superintendent was to approve of potential employees. See Pl.'s Resp. To Def.'s Statement of Material Undisputed Facts at ¶ 24.

> absent the most unusual circumstances, a federal court is not the appropriate
> forum in which to review the wisdom of a personnel decision taken by a
> public agency allegedly in reaction to the employee's behavior.

*Id.* at 147. As we do not find this is an unusual circumstance and Greene has failed

to provide sufficient evidence that he spoke as a citizen and that his speech was a

matter of public concern, the third prong of the "protected activity" test need not be

addressed. As a matter of law, Greene's speech was not a protected activity, an

essential element to a First Amendment claim, thus, no reasonable finder of fact

could conclude that the Defendants violated Greene's First Amendment rights.

Accordingly, the Defendants' Motion for Summary Judgment as to Count V

shall be granted.

### 2.      Violation of Liberty and Property Rights - Count XII

To succeed on a procedural due process claim against the Defendants, the

Plaintiff must show that his interest in continued employment with WAPA is

encompassed within the Fourteenth Amendment's protection of life, liberty, or

property. *See Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir 2005). It is axiomatic

that at-will employees do not have an entitlement to continued employment.

*Robertson v. Fiore*, 62 F.3d 596, 601 (3d Cir. 1995). In order to have a protected

property interest in a job, an employee must have a legitimate legal entitlement to

the job in question. *Elmore* at 282. Pursuant to Virgin Island law, as a Line

Superintendent at WAPA, Greene was an at-will employee, exempt from career service. *See* 3 V.I.C. § 451a(b)(7)(ii); *See also Iles v. De Jongh*, 638 F.3d 169, 173 (3d Cir. 2011). Greene has not challenged his status as an at-will employee, thus, no reasonable jury could find Greene had a constitutionally protected interest in his employment with WAPA. Consequently, as a matter of law, Greene cannot make a claim against WAPA or Bruno-Vega for denial of procedural due process.

Even if the Plaintiff was not an at-will employee and had a constitutionally protected interest in his job, his claim would still fail. Greene claims that the process used to terminate him was a sham and a violation of his procedural due process rights under the Fourteenth Amendment. Specifically, the Plaintiff asserts that his termination hearing was untimely, unfair, and biased. *See* Pl.'s Mem. Of Law in Opp'n to Mot. Of Def. Bruno-Vega for Summ. J. 25-26. On September 2, 2003, Greene received notice that, in violation of company policy, a surge protector had been found connected to the line side of his home meter base. The notice also made clear that the surge protector "does not cause power to be stolen and/or diverted." *Id.* at Exhibit 10. While there was no disciplinary action taken based on the September 2 memo, on July 19, 2004, Plaintiff received notification that he was being charged with stealing WAPA property (security lighting) and tampering with a meter. A hearing was held on July 23, 2004 during which Greene

was not able to make a record of the proceedings or obtain testimony from several

WAPA employees. New charges of insubordination were filed against Greene in

February 2005 and he was dismissed on April 7, 2005. However, as the Courts

have repeatedly emphasized, a public employee who can only be dismissed for

cause is only constitutionally entitled to a very limited pre-termination hearing.

The pre-termination hearing only needs to include oral or written notice of charges,

an explanation of the employer's evidence, and an opportunity for the employee to

explain his or her side of the story. *See, e.g.*, *Gilbert v. Homar*, 520 U.S. 924, 929

(1997). *See also Cleveland Bd. of Educ. v. Loudermill* 470 U.S. 532, 546 (1985);

*Ashton v. Whitman,* 94 Fed. Appx. 896, 900 (3d Cir. 2004). As Greene received

notice of the charges, an explanation of WAPA's evidence and an opportunity to

refute the claims, even if Greene was not an at-will employee, he was given all the

process that he was constitutionally entitled to receive.

Accordingly Defendants' Motion for Summary Judgment as to Count XII

shall be granted.

### 3. Violation of Right to Equal Protection of the Laws - Count XIII

Greene contends that WAPA's facially impartial personnel manual was

applied by Bruno-Vega and WAPA against Greene in an unjustified and

discriminatory manner. In order to prove unconstitutional discriminatory application of a facially neutral policy, a plaintiff "must demonstrate 1) that other similarly situated employees were not terminated despite their non-compliance with the ordinance and 2) that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)(quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)). Greene claims that unlike him, no other WAPA employees had their homes inspected or were subject to disciplinary hearings like he was. However, Greene presents no evidence that other WAPA employees had been suspected of connecting a surge protector to their electrical meter or had security lights shining on their property. Therefore, he cannot show that similarly situated employees were not terminated due to their non-compliance with the policy because he presents no evidence that other employees were non-compliant. Greene has not produced any evidence showing that a similarly situated employee was treated differently by WAPA or Bruno-Vega despite his or her non-compliance with the personnel manual, therefore, Greene has failed to satisfy the first element to establish a claim of selective enforcement in violation of the Equal Protection Clause.

Accordingly Defendants' Motion for Summary Judgment as to Count XIII shall be granted.

### E.     Violation of Virgin Islands Civil Rights Statutes - Count II

Greene's claims under the Virgin Islands Civil Rights Statute are brought pursuant to Chapter 1 of the Act. Chapter 1, by its terms, does not permit a private right of action against the government. *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 179 (3d Cir. 1999); *Miller v. Virgin Islands Hous. Auth.,* 2005 WL 1353395, at *1 (D.V.I., June 3, 2005). "[O]nly those who experience discrimination based on race, color, national origin, or creed, by an entity other than the Government of the Virgin Islands, may bring a civil action for damages." *Miller* at *5. As WAPA is a government entity, the plaintiff may not bring a private right of action against it under the Virgin Islands Civil Rights Act.

Thus, WAPA's Motion for Summary Judgment as to Count II shall be granted.

### F.     Defamation - Count IV

To survive summary judgment on a claim of defamation under Virgin Islands law, a plaintiff must establish that there exists a genuine issue of material fact as to four conjunctive elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault

amounting to at least negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of "special harm" or the existence of "special harm" caused by the publication. *VECC, Inc. v. Bank of Nova Scotia*, 296 F. Supp.2d 617 (D.V.I. 2003)(*citing* Restatement (Second) of Torts § 558 and *Manns v. The Leather Shop, Inc.*, 960 F. Supp. 925, 928 (D.V.I. 1997)). A statement is defamatory "if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977). Truth is a defense to a claim of defamation. *Cohen v. Raedler,* 17 V.I. 46 (1980).

Greene alleges that Bruno-Vega "generated rumors and gossip within WAPA about Greene being a thief and it was widespread knowledge that most of the WAPA employees had lost respect for Greene and considered him a thief who was on the verge of being terminated based on Bruno-Vega's false allegations." Pl.s' Resp. To Defs.' Statement of Material Undisputed Facts and Counter-statement of Disputed Material Facts,  ¶ 109. However, Greene was not present for any of the conversations where Bruno-Vega allegedly defamed him, rather, Greene bases his claims on what other co-workers told him. Pl.'s Dep. 138:2-139:13, Apr. 28, 2009. As Defendants' briefs points out, since Greene had no personal knowledge of Bruno-Vega or any other WAPA employees making comments to

26

co-workers about Greene, Greene was merely relying on the statements of his co-workers to ascertain what unnamed employees said about him. As Greene's deposition is based on the repetition of what he heard from his co-workers who supposedly heard defamatory comments from unnamed members of WAPA management, Greene's testimony at trial would be hearsay inadmissable. *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). While Greene could argue that the comments made by unnamed employees could fall under the "party agent" exception of Fed. R. Evid. 801(d)(2)(D), as the unnamed declarant cannot be identified there is not a "sufficient evidentiary foundation to establish the existence of an agency relationship as required under" Rule 801(d)(2)(D). *Canton v. Kmart Corp*, No. 05-0143, 2010 WL 545718, at *3 (D.V.I. Feb. 12, 2010).  As "hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment", we cannot consider the alleged statements made by unnamed declarants to Greene. *See, e.g.*, *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

Greene also seeks to rely on various newspaper articles to support his defamation claim, however, neither Bruno-Vega's remarks, nor any other portion of the articles, mention Greene by name. Greene's name is only mentioned in a

27

later article discussing the Attorney General's decision to drop charges against him. There is no allegation that WAPA or Bruno-Vega had any control over the contents of the latter newspaper article. As there is no admittable evidence that could support the first element of defamation, a false and defamatory statement concerning another, no reasonable jury could find WAPA or Bruno-Vega guilty of defaming Greene.

Consequently, the Defendants' Motion for Summary Judgment as to Count IV shall be granted.

## G.      Violation of Virgin Islands Whistleblowers Protection  Act - Count VI

WAPA claims that Greene's claim should fail as a matter of law because the Whistleblower Protection Act (WPA) requires that a claim be brought "within ninety days after the occurrence of the alleged violation." 10 V.I.C. § 123(a). Plaintiff claims that there exists a material fact as to when the alleged violation of the WPA occurred. WAPA argues that the alleged violation occurred on April 7, 2005 when the plaintiff was terminated. Greene argues that since he attempted to appeal the grievance procedures through September 20, 2005, the ninety-day period should begin on that day, the day he discovered that the WAPA decision

was final.[11] As the alleged violation occurred on April 7, 2005, the ninety day statute of limitations period also begins on that date.

Plaintiff further argues that since federal law required him to file an Equal Employment Opportunity Commission ("EEOC") complaint for his Title VII claim prior to filing a claim against WAPA, the statue of limitations for a WPA claim should be tolled during the pendency of his EEOC complaint. *See* 29 U.S.C. § 626(d). Plaintiff filed the complaint with EEOC on July 26, 2005 and did not receive a "Right to Sue" letter until November 2005.[12] Plaintiff argues that the ninety day period should be tolled until November 2005 when he received the "Right to Sue" Letter. As Plaintiff filed his complaint on January 24, 2006 (within 90 days of November 1, 2005), were we to accept Plaintiff's argument, Plaintiff would be able to maintain his WPA claim against the defendant.

In 2007, a Virgin Island trial court ruled "where the filing of an administrative claim or other proceeding is not made a statutory prerequisite to suit

---

[11]While it does not appear a Virgin Island Court has ruled on the matter, in the context of Title VII of the Civil Rights Act, the Supreme Court ruled that the statute of limitations to file a complaint with the Equal Employment Opportunity Commission begins at the time of the alleged "unfavorable employment decision." *Del. State. College v. Ricks*, 449 U.S. 250, 256-57 (1980). If applied to the WPA, plaintiff's ninety day statute of limitations would begin on the date of his "unfavorable employment decision," April 7, 2005.

[12]Defendant also argues that Greene's EEOC charge does not make a specific mention of a WPA violation. While the defendant is correct in this assertion, the Plaintiff did allude to the WPA violation in his EEOC complaint when he wrote, "I was terminated in retaliation for. . . WAPA's fear that I would disclose illegal activities of WAPA." Pl.s' Ex. 21, ¶ 37.

29

but is only permissive, the statute of limitations is not tolled by the pendency of

such a claim." *Williams v. Virgin Island Housing Authority*, 2007 U.S. Dist. LEXIS

98197 at *8 (D.V.I. Oct. 24, 2007). While the filing of an EEOC claim is a

statutory prerequisite for a Title VII claim, it is merely permissive for a territorial

WPA claim. No federal prerequisite prevented the plaintiff from filing a territorial

WPA claim within ninety days of April 7, 2005. No federal prerequisite prevented

the plaintiff from filing a territorial WPA claim within ninety days of September

20, 2005. Even if the September 20, 2005 date is used as the date of the alleged

improper termination, well over ninety days passed by the time plaintiff filed his

complaint in January 2006.

As the statute of limitations clearly ran before the Plaintiff filed suit under

the Virgin Island Whistleblowers Protection Act, the Defendants' Motion for

Summary Judgment as to Count VI shall be granted.

### H.    Breach of Contract - Count VII

"To prevail on a claim for breach of contract under Virgin Islands law, a

plaintiff must establish: (1) the existence of a contract between the parties; (2) that

the defendant breached a material duty imposed by that contract; and (3) that

damages resulted from the breach." *George v. V.I. Lottery Comm'n*, 2010 V.I.

Supreme LEXIS 77, at *9 (V.I. Sup. Ct., Dec. 6, 2010). An employee is at-will if

his employment agreement does not specify a particular duration, rather, his service will last as long as it is mutually satisfactory to employer and employee. *Marcano v. Cowpet Beach Resort*, 31 V.I. 99, 103 (Terr. Ct. 1995). The Plaintiff does not dispute that he was an at-will employee and has presented no evidence to suggest that a contract existed between WAPA and himself. WAPA's employee manual states that it is not a contract and gives WAPA the full power to unilaterally suspend or eliminate certain procedures. Since no contract existed, any discussion of the duty of good faith and fair dealing is a blind alley. Quite simply, no contract existed between the Defendants and Plaintiff.

As a matter of law, the Plaintiff cannot establish a *prima facie* case for breach of contract, therefore, the Defendants' Motion for Summary Judgment as to Count VII shall be granted.

## I.   Abuse of Process and Malicious Prosecution - Count IX

Greene alleges that the actions of WAPA and Bruno-Vega constitute two similar causes of action: malicious prosecution and abuse of process. The tort of abuse of process occurs when one "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed."

Restatement (Second) of Torts § 682.[13] Similarly, a successful cause of action for

malicious prosecution requires that the Defendant (1) initiated the institution of

criminal proceedings; (2) without probable cause; (3) primarily for a purpose other

than bringing an offender to justice. *Deary v. Three Un-Named Police Officers*,

746 F.2d 185, 194 n. 11 (3d Cir. 1984). Another requirement for a successful claim

is that proceedings have terminated in favor of the accused plaintiff. *Airlines*

*Reporting Corp. v. Belfon*, 351 F. Supp. 2d 326, 327 (D.V.I. 2004). The defendant

in a malicious prosecution case need not be a government prosecutor. Restatement

(Second) of Torts § 653.

As evidence for his abuse of process and malicious prosecution claims,

Greene alleges that WAPA caused criminal proceedings to be instituted against the

Plaintiff alleging that the Plaintiff was stealing electricity. As the Defendant points

out, a claim for abuse of process does not lie based on "the wrongful procurement

of legal process or the wrongful initiation of criminal or civil proceedings" but

rather for "the misuse of process, no matter how properly obtained, for any purpose

other than that which it was designed to accomplish." Restatement (Second) of

Torts § 682, cmt. a. The Plaintiff has presented sufficient evidence to suggest that

---

[13]Virgin Island law provides that the "restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4

WAPA had an improper purpose in making criminal allegations because there was no evidence that the Plaintiff stole property. As there are genuine issues of material fact as to the purpose of making the criminal allegations, Defendants' Motion for Summary Judgment as to Count IX shall be denied.

### **J.** **Intentional and Negligent Infliction of Emotional Distress - Count X**

The Plaintiff sues both WAPA and Bruno-Vega for intentional infliction of emotional distress (IIED). The requirements to recover for IIED are discussed in the Restatement (Second) of Torts which provides that "[o]ne by who extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1). The comments to the Restatement go on to mention that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d.

The Plaintiff alleges that the Defendants' pattern of hostility and adverse actions against the Plaintiff over the course of three years amounts to IIED. At the

outset it is important to note that "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress" and "[d]iscrimination alone does not state a claim for intentional infliction of emotional distress." *Ramos v. St. Croix Alumina, L.L.C.*, 277 F. Supp.2d 600, 604 (D.V.I. 2003). In our view, none of the alleged instances of improper conduct alleged by Greene (even when considered in the totality) provides enough of a basis to present a question to the jury on IIED. Greene's evidence of an unpleasant work place experience and termination simply does not rise to the level of outrageousness to permit recovery.

Greene has withdrawn his claim for negligent infliction of emotional distress (NIED) against Bruno-Vega, but has not explicitly withdrawn his complaint against WAPA. Greene has not presented any argument in his brief as to why this claim for NIED against WAPA should survive summary judgment. As Greene has presented no argument about NIED against WAPA, the Court considers Greene's claim withdrawn.

As a matter of law, the alleged wrongdoings of the Defendants amount to neither intentional infliction of emotional distress nor negligent infliction of emotional distress. Accordingly, the Defendants' Motion for Summary Judgment

as to Count X shall be granted.

### K.   Claim for Punitive Damages - Count XI

"Punitive damages are awarded at the jury's discretion to "punish the defendant for his outrageous conduct and to deter him and others like him for similar conduct in the future." Restatement (Second) of Torts § 908(1). Punitive damages are not assessable against WAPA absent express statutory authority for the imposition of such an award because the cost of the award to the plaintiff would ultimately be borne by the citizens of the community through higher utility rates. *Powell v. WAPA*, 20 V.I. 579, 582 (D.V.I. 1984). Furthermore, the Supreme Court has stated the general rule that punitive damages cannot be assessed against public and/or municipal corporation. *Newport v. Fact Concerts*, 453 U.S. 247, 261 n. 21 (1981). Plaintiff argues that punitive damages may be assessed against Defendant Bruno-Vega. Based on our rulings here, Bruno-Vega may be found liable for multiple torts at trial, thus, at this juncture, we shall permit the Plaintiff's request for punitive damages against him proceed.[14]

Accordingly, the Defendants' Motion for Summary Judgment as to Count XI, to the extent it relates to WAPA, is granted. The Defendants' Motion for

---

[14]In allowing the punitive damages claim to proceed, we of course express no opinion regarding Plaintiff's ability to succeed thereon at trial.

Summary Judgment as to Count XI, to the extent it relates to Bruno-Vega, is denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Motion of the Virgin Islands Water and Power Authority for Summary Judgment (Doc. 170) is **GRANTED IN PART** as to Counts I and III, as they relate to the Plaintiff's discrimination in promotion, discrimination in pay, and hostile work environment claims, Counts II, IV, V, VI, VII, X, XI, XII, XIII, and IV and **DENIED IN PART** as to Counts I and III, as they relate to the Plaintiff's discrimination in termination claim, and Count IX.[15]

2.    Motion of  Alberto Bruno-Vega for Summary Judgment (Doc. 173) is **GRANTED IN PART** as to Counts IV, V, VI, VII, X, XII, XIII, and IV and **DENIED IN PART** as to Counts IX and XI.

3.    The counts that remain are as follows: Count I, as it relates to the Plaintiff's discrimination in termination claim, against WAPA, Count IX against WAPA and Bruno-Vega, and Count XI against Bruno-Vega.

4.    Defendant's Motion to Strike or in the Alternative for Leave to File

---

[15]Plaintiff did not identify a "Count VIII" in his complaint.

36

Sur-Reply in Support of Motion for Summary Judgment (Doc. 215) is

**DENIED**.

5.  Plaintiff's Motion for Leave Pursuant to Rule 6(b) to File Sworn

    Testimony in Further Support of Plaintiff's Opposition to Motion for

    Summary Judgment (Doc. 227) is **DENIED**.


<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge