IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CARL GREENE, | : | 1:06-cv-11 |
| Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| VIRGIN ISLANDS WATER AND POWER AUTHORITY and ALBERTO BRUNO-VEGA, | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**October 5, 2012**

Pending before the Court are the Motions for Reconsideration of our July 22, 2011 Memorandum and Order (Doc. 325), filed by the Defendants Virgin Islands Water and Power Authority ("WAPA") and Alberto Bruno-Vega ("Bruno-Vega"). The Motions move us to reconsider our denial of summary judgment on Plaintiff's abuse of process and malicious prosecution claims, as well as Plaintiff's employment discrimination claim. (Docs. 237 and 239). For the reasons that follow, the Motions shall be denied.

## I. BACKGROUND

This case, filed by Plaintiff Carl Greene ("Plaintiff" or "Greene"), arises out of his termination from employment with WAPA. Greene was first hired by

WAPA as an Apprentice Lineman on May 21, 1990 and was promoted to the Line Department's highest ranking employee, Line Superintendent, on September 1, 2001. It was from this position that Greene was terminated on April 7, 2005.

The Plaintiff was terminated after an investigation by the Inspector General revealed that Greene was allegedly responsible for tampering with his residential electrical meter. The Inspector General's report recommended that WAPA take appropriate administrative action against Greene and/or make criminal referral of Greene's alleged actions. WAPA commenced disciplinary proceedings against Greene, and after several hearings, Greene was terminated for violating provisions of the WAPA Personnel Policies and Procedures Manual, including tampering with his residential meter and obtaining security lighting without authorization or payment.

Greene claims that the Inspector General's investigation was directed towards his residential meter by Bruno-Vega, WAPA's Executive Director. Although Greene, a Black, West Indian, has now withdrawn his discrimination claims against Bruno-Vega, Greene argues that WAPA targeted him because he was not of Hispanic origin. Greene essentially argues that Bruno-Vega single-handedly orchestrated his downfall, and during that course of conduct, Bruno-Vega and WAPA defamed him, violated his constitutional rights protected by the

First and Fourteenth Amendments, and committed a variety of torts against him, including abuse of process, malicious prosecution and intentional infliction of emotional distress.

By Memorandum and Order dated July 22, 2011 (Doc. 235), we denied the Defendants' Motion for Summary Judgment with respect to Plaintiff's malicious prosecution and abuse of process claims, as well as Plaintiff's Title VII employment discrimination claim. We granted summary judgment in favor of the Defendants on the remainder of Plaintiff's claims. Defendants now move us to reconsider our denial of summary judgment on the malicious prosecution and abuse of process claims, as well as the employment discrimination in termination claim.

## II.   STANDARD OF REVIEW

Motions for reconsideration are governed by Local Rule of Civil Procedure 7.3, which provides:

> A party may file a motion asking a judge or magistrate judge to reconsider an order or decision made by that judge or magistrate judge. Such motion shall be filed within ten (10) days after the entry of the order or decision unless the time is extended by the court. . . . A motion to reconsider shall be based on: (1) intervening change in controlling law; (2) availability of new evidence, or; (3) the need to correct clear error or prevent manifest injustice.

LRCi 7.3. The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Such motions are not substitutes for appeals, and are not to be used as "a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not." *Bostic v. AT&T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004). As the *Bostic* court noted, ". . . Local Rule 7.4 affirms the common understanding that reconsideration is an 'extraordinary' remedy not to be sought reflexively or used as a substitute for appeal." *Id.*

The second purpose of a motion for reconsideration is to present newly available evidence. It is well-settled that a motion for reconsideration cannot be used to introduce for the first time evidence that was previously available, thus giving the party seeking to present such evidence a second bite at the apple. *See Prusky v. Prudential Ins. Co. of Am.*, 44 Fed. Appx. 545, 548 n.1 (3d Cir. 2002) (explaining that the purpose of a reconsideration motion "is not to allow a party to simply change[ ] theories and [try] again, thus giving them a second bite at the apple" (quotation omitted)); *Mincey v. Head,* 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) ("The function of a motion to alter or amend a judgment is not to serve as a

vehicle to relitigate old matters or present the case under a new legal theory . . . [or] to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment."); *see also*, *e.g.*, *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir. 1985) (affirming the denial of a reconsideration motion because "all of the evidence on which [the defendant's] new arguments rest was available to it at the time it responded to plaintiff's summary judgment motion and [the defendant] was obligated to make these arguments at that time").

The third purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,909 (3d Cir. 1985). Such motions are not substitutes for appeals, and are not to be used as "a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not." *Bostic*, 312 F. Supp. 2d at 733.

In the context of a motion to reconsider, manifest injustice "[g]enerally, [] means that the Court overlooked some dispositive factual or legal matter that was presented to it." *In re Rose*, No. 06-1818, 2007 U.S. Dist. LEXIS 64622, at *3

(D.N.J. Aug. 30, 2007). Manifest injustice has also been defined as "'an error in the trial court that is direct, obvious, and observable.'" *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004)(quoting *Black's Law Dictionary* 974 (7th ed. 1999)). "[M]ost cases . . . use the term 'manifest injustice' to describe the result of a plain error." *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

## III. DISCUSSION

### A. Violation of Title VII - Discrimination in Termination

Defendants move us to reconsider our denial of summary judgment with respect to Plaintiff's Title VII discrimination claim with respect to his termination. Specifically, the Defendants argue that we failed to make a finding that a causal nexus existed between Greene's membership in a protected class and his termination and that we erred by finding Greene had presented sufficient evidence to raise an inference of discrimination in his termination.

As we noted in our Memorandum and Order, because there is no direct evidence of discrimination in Greene's termination, to establish a *prima facie* case of discrimination in termination under Title VII, Greene must show that: (1) he was a member of a protected class; (2) he was qualified for the position he held;

(3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected class were treated more favorably. *Jones v. School Dist. Of Philadelphia,* 198 F.3d 403, 410-11 (3d Cir. 1999); *Jackson v. Univ. of Pittsburgh,* 826 F.2d 230, 232 (3d Cir. 1987). Once an employee has established a *prima facie* case of discrimination, an employer may defeat a claim by showing a legitimate, non-discriminatory reason for an adverse employment decision. In order to prevail over the employer, a plaintiff must show that the employer's proffered legitimate reason is merely a pretext for unlawful discrimination. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir. 2000).

In denying summary judgment, we reasoned that:

> WAPA argues that no reasonable jury could find that Greene has established a *prima facie* case of discrimination because Greene has failed to present evidence of any similarly situated employees who are not members of the protected class who were treated more favorably. The Defendant argues that to be considered "similarly situated" for purposes of a Title VII employment discrimination claim, "those individuals must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Davis v. City of Philadelphia Water Dept.*, 57 Fed. Appx. 90, 92 (3d Cir. 2003). The Third Circuit has ruled that an allegation that "some members of one group are sometimes treated better and sometimes treated worse than members of another group" *may* be an acceptable inference to establish the fourth prong at the *prima facie* state of analysis for a discrimination claim. *Simpson v. Kay Jewelers*, 142

F.3d 639, 646 (3d Cir. 1998).

Greene alleges that WAPA was discriminatory in failing to twice promote him as Line Superintendent in favor of a White employee and a Hispanic employee. Greene also alleges that his termination in 2005 was racially motivated. The Plaintiff argues that it is "clear" that WAPA did not want to promote a Black, West Indian to a supervisory position. WAPA disputes this claim and argues that Greene was not promoted early because, at age 32, he had limited experience. WAPA also notes that Greene eventually was promoted and that his successor was a Black, West Indian.

*Despite these legitimate, non-discriminatory reasons offered by WAPA, Plaintiff has cited multiple examples of alleged injustices including the hiring of non-qualified Hispanics, failure to receive evaluations with sufficient frequency, vacancies in his department that were not filled, failures to follow the WAPA employee manual, and trumped up allegations of theft in an effort to show that his termination was merely WAPA discriminating against Greene based on his race and national origin. While the evidence is tenuous, a reasonable jury could disagree about whether Greene's race or national origin played into WAPA's decisions about Greene's employment.*

(Doc. 235, pp. 7-8)(emphasis added). Thus, while WAPA contends that we not properly consider whether a causal nexus was established sufficient to state a *prima facie* case or that Greene did not present sufficient evidence to raise an inference of discrimination, based on the above cited passages from our July 22, 2011 Memorandum and Order, we disagree.

With respect to pretext, we determined that:

> Plaintiff has presented evidence about WAPA's alleged "sham process" including Plaintiff's contention that he engaged in no wrongdoing, WAPA's failure to follow its own procedures and that the Plaintiff was singled out for investigation of line theft. Whether WAPA honestly believed the asserted grounds for Greene's dismissal at the time of termination, as well as Plaintiff's contentions about the flawed process used to terminate him, creates a material dispute of fact such that a reasonable jury could conclude that WAPA's articulated reasons for Greene's termination were inherently weak and/or false or that an invidious discriminatory reason was more likely than not a determinative factor in Greene's termination.

(Doc. 235, pp. 9-10). While Defendants contend that this reasoning is "clearly" erroneous, we disagree. We find that a reasonable jury could consider the combination of all of these facts and contentions by the Plaintiff to be indicative of pretext by the Defendants. Accordingly, we shall deny this request for reconsideration.

**B. Abuse of Process and Malicious Prosecution - Count IX**

Greene alleges that the actions of WAPA and Bruno-Vega constitute two similar causes of action: malicious prosecution and abuse of process. The tort of abuse of process occurs when one "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." Restatement (Second) of Torts § 682.[1] Similarly, a successful cause of action for

---

[1]Virgin Island law provides that the "restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to

malicious prosecution requires that the Defendant (1) initiated the institution of criminal proceedings; (2) without probable cause; (3) primarily for a purpose other than bringing an offender to justice. *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 194 n. 11 (3d Cir. 1984). Another requirement for a successful malicious prosecution claim is that proceedings have terminated in favor of the accused plaintiff. *Airlines Reporting Corp. v. Belfon*, 351 F. Supp. 2d 326, 327 (D.V.I. 2004). The defendant in a malicious prosecution case need not be a government prosecutor. Restatement (Second) of Torts § 653.

We denied the Defendants' request for summary judgment on these claims reasoning that:

> As evidence for his abuse of process and malicious prosecution claims, Greene alleged that WAPA caused criminal proceedings to be instituted against the Plaintiff alleging that the Plaintiff was stealing electricity. As the Defendant points out, a claim for abuse of process does not lie based on "the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings" but rather for "the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Restatement (Second) of Torts § 682, cmt. a. The Plaintiff has presented sufficient evidence to suggest that WAPA had an improper purpose in making criminal allegations because there was no evidence that the Plaintiff stole property. As there are genuine issues of material fact as to the purpose of making the criminal allegations, Defendants' Motion for Summary Judgment as to Count IX shall be denied.

---

which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4

(Doc. 235, pp. 32-33).

Defendants contend that our reasoning was in error because neither WAPA nor Bruno-Vega "initiated" the criminal proceedings against Greene pursuant to Section 653 of the Restatement. Comment c to that section provides that:

> Criminal proceedings are initiated by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused. Thus one who, personally or by a third person for whose conduct he is responsible under the law of agency, presents to a magistrate a sword charge upon which a warrant of arrest is issued, initiates the criminal proceedings of which the issuance of a warrant is the institution.

Thus, the Defendants assert that, because they did not provide any sworn charge relating to Greene, appear before a Magistrate, or take any official action against Greene, summary judgment must be granted in their favor of the malicious prosecution claim. The Defendants submit that the Inspector General's office, not WAPA or Bruno-Vega, provided the Attorney General with Greene's identity and information related to the alleged electricity tampering. Thus, Defendants reason, Greene cannot establish that the Defendants "initiated" criminal proceedings against him for the purposes of a malicious prosecution claim.

The Defendants' argument recognizes that, under comment d to Section 653, a person can be liable for malicious prosecution if they either induce a third

person (either a private person or a prosecutor) to initiate charges, or by prevailing upon a public official to institute charges by filing an information. However, they argue that if the decision to initiate the proceedings is left to the uncontrolled choice of the third person, then the private individual giving information or making an accusation cannot be held liable for malicious prosecution. Comment g to the Section states, in pertinent part:

> When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain . . .In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

The Defendants therefore contend that, while it is true that WAPA and Bruno-Vega assisted with the Inspector General's investigation of Greene, it was the Inspector General's office that subsequently provided information concerning Greene to the Attorney General's office, which then decided to bring criminal charges against Greene. They argue that WAPA and Bruno-Vega's role in this

process was to attenuated too give rise to liability.

Accordingly, Defendants contend that summary judgment must be granted in their favor with respect to the abuse of process claim because there is a complete lack of evidence establishing that the Defendants actually used any legal process against Greene.[2]  They assert that, even if WAPA and Bruno-Vega had an improper purpose in making criminal allegations against Greene, they never actually utilized process against him.

We have considered the Defendants' reconsideration arguments.  Our prior determination to deny summary judgment on both Plaintiff's the malicious prosecution and the abuse of prosecution claims remains unaltered by them.  The factual record pertaining to this portion of the Plaintiff's claim is hotly disputed.  It is clear that the Inspector General's office was working in conjunction with WAPA during the investigation that gave rise to the charges against Greene, a WAPA employee.  Ultimately Greene was cleared of the allegations of theft.  We simply find that there exist too many issues of fact to properly grant summary judgment, and shall properly leave the determination of these claims to the jury.

---

[2] An abuse of process claim exists when one uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed. Restatement (Second) of Torts § 682.

Finally, we must address the Defendants' argument that we dismiss the punitive damages claim against Bruno-Vega. Defendants contend that Bruno-Vega has only been sued in his official capacity in this case, and as such, no punitive damages claim can survive against him. The Defendants specifically point to the pleadings in this action, which only state that Bruno-Vega has been sued in his official capacity. Thus, they argue, to permit a punitive damages claim to proceed against him would be manifestly unfair because Bruno-Vega was unaware that his personal assets would be at stake in this litigation because he was not properly on notice that he was being sued in his individual capacity. We respectfully disagree. While the pleading might be technically deficient in failing to identify that Bruno-Vega is being sued in his personal capacity, the Third Circuit has held that any ambiguity should be resolved in favor of assuming that a defendant is being sued in his or her personal capacity. *See Atwell v. Schweiker*, 274 Fed. Appx. 116, 118 (3d Cir. 2007); *Gregory v. Chehi*, 843 F. 2d 111, 119-120 (3d Cir. 1988). Accordingly, we shall deny the Defendants' request for reconsideration on this point as well.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motions for Reconsideration (Docs. 237 and 239) are **DENIED**.

s/ John E. Jones III
John E. Jones III
United States District Judge