IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CARL GREENE, | : | 1:06-cv-11 |
|     Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| VIRGIN ISLANDS WATER AND POWER | : | |
| AUTHORITY and ALBERTO | : | |
| BRUNO- VEGA, | : | |
|     Defendants. | : | |

### **MEMORANDUM**

### **May 22, 2013**

Pending before the Court is the Motion of the Virgin Islands Water and Power Authority ("WAPA") for Summary Judgment on the Issue of Whether Plaintiff has Established a *Prima Facie* Case of Discrimination as to the Termination of his Employment ("the Motion")(Doc. 279), filed on May 6, 2013. The Motion has been fully briefed by the parties (Docs. 280, 282, 285) and is therefore ripe for our review.[1]  For the reasons that follow, the Motion shall be

---

[1] This Court previously denied summary judgment with respect to Plaintiff's Title VII discrimination in termination claim.  However, upon reviewing the parties pre-trial memoranda in this matter, we questioned whether the Plaintiff had, as a matter of law, established a *prima facie* case for this claim.  We raised this case dispositive issue with the parties at the pre-trial conference conducted on April 29, 2013, and extended an invitation to the Defendant to file a renewed summary judgment motion on this limited issue.  An expedited briefing schedule was ordered, with which the parties have complied.  Thus, this matter is fully at issue before the Court.

granted. Further, we shall decline to exercise supplemental jurisdiction over the Plaintiff's remaining common law claims.

## I. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The

non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II.   BACKGROUND

The instant matter, filed by Plaintiff Carl Greene ("Plaintiff" or "Greene") a black West-Indian, arises out of his termination from employment with WAPA.

Greene was first hired by WAPA as an Apprentice Lineman on May 21, 1990 and was promoted to the Line Department's highest ranking employee, Line Superintendent, on September 1, 2001. It was from this position that Greene was terminated on April 7, 2005.

In 2003, under the tenure of WAPA's then-Executive Director Defendant Alberto Bruno-Vega ("Bruno-Vega"), an investigation of line-losses and meter tampering in St. Croix was undertaken in conjunction with the Inspector General. During this investigation, the Inspector General identified Greene as contributing to WAPA's line loss through conduct taken at his own home with respect to his electrical meter. The Inspector General issued a report recommending that WAPA take appropriate administrative action and/or make a criminal referral of Greene's alleged actions.

Thereafter, WAPA commenced disciplinary proceedings against Greene, and after several hearings, on April 7, 2005, Greene was terminated for violating provisions of the WAPA Personnel Policies and Procedures Manual, including tampering with his residential meter and obtaining security lighting without authorization or payment. Greene appealed his termination, and after a hearing on July 20, 2005, WAPA affirmed his termination.

This action was filed on January 20, 2006 by Plaintiff against WAPA and

Bruno-Vega. As alluded to above, the only remaining federal claim is Greene's one of discrimination on the basis of his national origin relative to his termination from employment with WAPA.

## III. DISCUSSION

The familiar *McDonnell Douglas* burden shifting analysis applies to Greene's claim of employment discrimination under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Accordingly, Greene bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993). The existence of a *prima facie* case is a question of law to be decided by the Court. It requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; (4) and under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *McDonnell Douglas*, 411 U.S. at 802. Here, it is undisputed that, as a Hispanic, Greene belongs to a protected class and that he was qualified for the position of Line Superintendent, from which he was terminated. Thus, the limited issue for consideration on the instant Motion is whether Plaintiff has set forth evidence to establish that his

termination was made "under circumstances that raise an inference of discriminatory action." *Id.*

The "central focus" of this fourth and final element of the *prima facie* case "is always whether the employer is treating "some people less favorably than others because of their race, color, religion, sex, or national origin." *Sarullo v. United States Postal Service*, 352 F. 3d 789, 798 (3d Cir. 2003)(quoting *Pivorotto v. Innovative Sys., Inc.*, 191 F. 3d 344, 352 (3d Cir. 1999). What is essential to establishing this element is the showing of a causal nexus between the plaintiff's membership in a protected class and the adverse employment action against him. *See id*. This final element of the *prima facie* case can be met by setting forth evidence that similarly situated employees who are not members of the protected class were treated more favorably. *Jones v. School Dist. of Philadelphia*, 198 F. 3d. 403, 411 (3d Cir. 1999). Thus, Greene may establish this element by showing that similarly situated employees of WAPA who were Hispanic or non-West Indian were treated more favorably than him. *Jones v. School Dist. of Philadelphia*, 198 F. 3d. 403, 411 (3d Cir. 1999); *Jackson v. Univ. of Pittsburgh*, 826 f. 2d 230, 233 (3d Cir. 1987); *Davis v. City of Philadelphia Water Dept.*, 57 Fed. Appx. 90, 92 (3d Cir. Jan. 30, 2003).

Green identifies WAPA Revenue Manager Ray Belardo ("Belardo") as a

6

similarly situated individual that was treated differently from him.  Green asserts that WAPA refused to investigate the Hispanic Belardo, "despite the fact that there was a huge loss of revenue from line thefts and Belardo was supervising the crew who performed revenue diversions." (Plaintiff's Affidavit, Doc. 282-6, ¶ 15). Green also identifies Hector Mercado ("Mercado") as a similarly situated individual.  Mercado, a Hispanic, was a Water Superintendent for WAPA, and WAPA did not investigate him "despite substantial evidence of water diversion in St. Croix in the vicinity of Sunshine Mall, the Estate Cane area, where a massive diversion of water was occurring with WAPA losing mass revenues as a result." (Plaintiff's Affidavit, Doc. 282-6, ¶ 13).

While we agree with Greene that the Third Circuit's view of the similarly situated test is flexible and depends on the circumstances, *See Sarullo*, 352 F. 3d at 798 n. 7, under the most liberal of views, we cannot find that Belardo or Mercado were similarly-situated individuals that were treated differently from Greene.  With respect to Belardo, there is not one scintilla of evidence in the record to show that Belardo's purported supervision of a crew who allegedly performed revenue diversions is roughly equivalent to Green's personal conduct of alleged meter tampering and improper use of a security light at his own residence.  As with Belardo, Mercado held a different job in a different department than Greene, and

there is no evidence in the record to show that Mercado's role as Superintendent of a department where a diversion allegedly occurred amounts to the same conduct as Greene's alleged tampering and policy violations at his personal residence. Furthermore, we do not entirely disagree with the Plaintiff's contention that finding comparators to him is nearly impossible based on his unique situation. However, the uniqueness of Greene's situation – that he was identified and investigated by the Inspector General for line theft at his personal residence– tends to show that Greene's termination from WAPA was unmotivated by Greene's national original and rather motivated by WAPA's impression, based on the results of the Inspector General's investigation, that Greene was stealing power from it.

Moreover, Greene's attempt to overcome the absence of similarly situated comparator evidence by stating that he has offered sufficient evidence of other circumstances to give rise to an inference of discrimination is unavailing. *See Sarullo*, 352 F. 3d at 797-798 (the Third Circuit expressly recognized that "the *prima facie* test remains flexible and must be tailored to fit the specific context in which it was applied," and unambiguously held that a causal nexus is required to succeed on an "other circumstances" of discrimination theory."). Undoubtedly, Greene has employed an "everything but the kitchen sink" approach to raise this inference, by arguing, *inter alia*, that WAPA had allegedly improper bidding

procedures for Puerto Rican vendors, that WAPA paid for the Inspector General's investigation, and the fact that Greene's West Indian successor is married to a Hispanic woman.  However, none of the evidence offered by Greene, even if taken together, establishes a <u>causal nexus</u> between Greene's termination and his national origin.  A collection of stray remarks and unconnected, coincidental circumstances does not a causal nexus make.

Based on all of the foregoing, we find that Greene has failed to establish a *prima facie* case for discrimination in his termination pursuant to Title VII.  Accordingly, we shall dismiss this sole-remaining federal claim.  Pursuant to 28 U.S.C. § 1367, we shall decline to exercise supplemental jurisdiction of Greene's remaining territorial claims of malicious prosecution and abuse of process.  *See Prentice v. Office Max N.A.*, 2012 WL 898323, at *11 (D.V.I. Mar. 15, 2012) *citing Hedges v. Musco,* 204 F. 3d 109, 123 (3d Cir. 2000)("A district court may decline to exercise supplemental jurisdiction over a claim if it 'has dismissed all claims over which it has original jurisdiction.'").